FILED

2020 Jan-06  PM 01:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ALABAMA

## NORTHEASTERN DIVISION

**JOSHUA CLAY ADAMS**

***Plaintiff***

**Versus**                                    **Civil Action:**

**HUNTSVILLE HOSPITAL**

***Defendant***

_____

## PLAINTIFF'S ORIGINAL COMPLAINT

_____

TO THE HONORABLE JUDGES OF THIS COURT:

Now comes Plaintiff, Joshua Clay Adams, complaining of

Defendant, Huntsville Hospital, and in support for his causes of

action respectfully shows this Court as follows:

## I.

## NATURE AND PURPOSE OF THIS ACTION

1.      Joshua Clay Adams satisfies the criteria as an individual with a

disability as an individual being regarded as having such an

impairment and has been subjected to an action prohibited by

Federal law and pursuant to the United States Constitution

because of an actual or perceived physical or mental disability.

2.     Huntsville Hospital is a public entity within the definition of the Rehabilitation Act of 1973 and Americans with Disabilities Act engaged in the providing of mental health care, treatment and services and is a recipient of federal funding.

3.     This is an action under Title II of the Americans with Disabilities Act of 1990, as amended, and under Section 505 of the Rehabilitation Act of 1973, which enforces Section 504 of the Rehabilitation Act of 1973 to redress unlawful discrimination based practices and to recover damages, economic and non-economic, for violations of Plaintiff's rights under the United States Constitution and federal statutes on the basis of his perceived impairment.

## II.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over the parties, plaintiff and defendants as a result of their domicile and residence in State in which this District Court has jurisdiction.

5.     This Court has subject matter jurisdiction pursuant to provisions of 28 U.S.C. sections 1331 and 1441.  The causes of action presented on behalf of Plaintiff arise under the laws of the United States because the allegations present violations of Section 504 of the

Rehabilitation Act of 1973 (as amended), 29 U.S.C. section 794, 794a and Americans with Disabilities Act of 1990, 42 U.S.C. 12101 et seq. and 42 U.S.C. 9501.  This Court has subject matter jurisdiction pursuant to the provisions of the Alabama Mental Health Consumer Rights Act which extends the protections of the laws and Constitution of the United States to individuals in mental health care facilities in the State of Alabama.

6.     This Court has supplemental subject matter jurisdiction over all claims that do not raise a federal question.

7.     Venue is proper in this District pursuant to the provisions of 28 U.S.C. 1391 (a) through (d) because, inter alia, substantial parts of the events, commissions and/or omissions giving rise to the causes of action occurred in the jurisdiction of the District Court and/or on a substantial part of property that is subject to the jurisdiction of this Court.

### III.

### PARTIES

8.     Joshua Clay Adams is a resident and domiciliary of the State of Alabama.

9.     Huntsville Hospital is a mental health facility owned and operated by the municipality of Huntsville, Alabama governed by a Board of Directors comprising the Health Care Authority of Huntsville appointed by the City of Huntsville, Alabama and is therefore a "public entity" within the meaning of the ADA, 42 U.S.C. 12131 (1) and is subject to Title II of the ADA, 42 U. S. C.  12131 et seq and its implementing regulations.

10.    At all relevant times Huntsville Hospital has been a "recipient" of federal financial assistance, including funding through grants and including Medicaid funds, and is therefore subject to the Rehabilitation Act 29 U.S.C. 794 and its implementing regulations.

## IV.

## STATUTORY AND REGULATORY BACKGROUND

11.    Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. 12101 (b) (1).

12.     Congress prohibited discrimination against individuals with disabilities by public entities: [N]o qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. 12132.

13.     Congress directed the Attorney General to issue regulations implementing Title II of the ADA.  42 U.S.C. 12134.  Title II regulations require public entities to "administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. 35.130 (d).

14.     Regulations implementing Title II of the ADA further prohibit public entities from utilizing "criteria or methods of administration" that have *the effect of subjecting qualified individuals with disabilities to discrimination* or that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities.  28 C.F.R. 35. 130 (b) (3); accord 45 C.F.R. 84.4 (b) (4) the Rehabilitation Act.

15.     Discrimination on the basis of disability is also prohibited by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 (a): "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or *be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity. . . "*

**V.**

**STATEMENT OF FACTS**

16.    Plaintiff presented himself voluntarily at the mental health facility owned and operated by Defendant, Huntsville Hospital, on or about January 15, 2018.  Based upon his independent recollection and medical records Plaintiff believes that the events took place in the order and at the times stated herein.

17.    As reflected in the nurse's notes Plaintiff was held against his will almost immediately upon his arrival at Defendant's facility.   The nurse's notes indicate that the interview with the unidentified individual, Psych Screener" occurred after initially being held without his consent and without voluntary admission.   The nurse's notes indicate creation of the entry for PREHOSPITAL CARE at 8:39 a.m. and completion at 9:59 a.m. stating that "psych screener has not seen patient.  Security was notified for patient search. . . "

18.    The medical record further indicates that the "Psych Screener Disposition/Bed Request" was not completed until after Plaintiff has been seized by personnel at the hospital and involuntarily administered drugs. The nurse's notes indicate that Plaintiff was forcibly held down by "3 techs and security officer to deliver medications" at 2:54 p.m. on January 15, 2018.

19.    The medical record further indicates that a physician was fully aware and cognizant of the false imprisonment of Plaintiff and approved the involuntary administration of medications, all without lawful justification to restrain or to hold Plaintiff or to administer medications.

20.    At no time did Plaintiff consent to admission let alone being held down by three people and injected with medications.

21.    After holding Plaintiff against his will for two days and threatening him with further imprisonment and involuntary medications Plaintiff signed the presented forms for voluntary admission on January 17, 2018 in order to get out of Defendant's hospital.

22.    Plaintiff was released on January 18, 2018.

23.     All actions taken by Defendant were intentional and in direct violation of the rights and liberties of Plaintiff as guaranteed through the United States Constitution, federal statutes, the Rehabilitation Act of 1974 and Americans with Disabilities Act, as amended; implementing regulations and state law.

24.     Plaintiff was held against his will and falsely imprisoned by Defendant acting through its employees, agents and representatives, the unidentified "Psych Screener"; security personnel who held him down and assisted in the injection of drugs against his will and without his consent; nursing staff including but not limited to Nicole Hollingsworth, R.N., Cindy Ratchford, R.N.;  Steven Werdehoff, M.D.; Morgan Lowry, P.A.; Tarak M. Vasavada, M.D.; Quratulain Agha, M.D. and Pat Jackson.

25.     Plaintiff only signed the voluntary admission in order to effect his release from confinement.

26.     There was no lawful cause for the false imprisonment.

27.     Upon his release on January 18, 2018 Plaintiff attempted to address the violations through administrative process.  The response was a standard response letter which did not address any of the violations and is further evidence that Defendant was fully aware of

the rights of an individual with a disability such as Plaintiff and the applicable State and Federal laws and regulations governing their behavior.

28.    Despite knowledge and awareness Defendant engaged in the behavior described in violation of the applicable Federal and State statutes and the United States Constitution with the full knowledge that the actions taken in deprivation of Plaintiff's rights and liberties was in violation of the law.

29.    Defendant acting knowingly and intentionally in its deprivation of rights and liberties and/or in indifference to the rights and liberties of Plaintiff.

30.    All damages and injuries suffered by Plaintiff were caused directly and proximately by the actions and/or omissions of Defendant.

## VI.

## VIOLATIONS

### COUNT NO. 1

31.    All allegations of this Complaint are restated and reiterated herein as if set forth in full.

32.    Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 et seq. and its implementing regulations require that any program or

activity receiving Federal financial assistance may not discriminate against any otherwise qualified individual with a disability.  Programs or activities covered by Section 504 include corporations or private organizations principally engaged in the business of heath care including mental health care, 29 U.S.C. 794 (b)(3).  Under the Amendments to the Americans with Disabilities Act, the definition of a disability for purposes of the Rehabilitation Act of 1973 conforms to the definitions of disability under the Americans with Disabilities Act, 29 U.S.C. 705 (20) (B).

33.   Section 504 protects individuals broadly not just those who have a mental impairment or a record of impairment but also those individuals who are "regarded as having such an impairment."  45 C.F.R. 84.3 (j) (1) (iii).  Specifically, 45 C.F.R. 84.3 (j)(2)(iv) defines the term "regarded as having an impairment" to mean:

    (A)   Has a physical or mental impairment that does not substantially limit major life activities but that is treated by a recipient as constituting such a limitation;

    (B)   Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment: or

(C)     Has none of the impairments defined in paragraph (j)(2)(i)
of this section but is treated by a recipient as having such an
impairment.

34.     The breadth and scope of the protections against discrimination
against physically or mentally handicapped individuals protects those
individuals who are treated by the recipients of Federal financial aid
as being in need of treatment or admission to a mental health
institution whether that individual is in fact an individual with a
mental disability, whether the individual does or does need treatment
or admission to a mental health institution and have the protection of
the United States Constitution ensuring all constitutional and natural
rights of the individual to not be held against their will in a mental
health institution whether there is a need for them to be there or not.

35.     The Rehabilitation Act of 1973 and the applicability provisions
of the regulations apply to each recipient as well as the overall
program receiving financial assistance.  45 C.F.R. 84.2 ("This part
applies to each recipient of Federal financial assistance from the
Department of Health and Human Services and to the program or
activity that receives such assistance.").  In addition to the definition
of recipient including "any public or private agency, institution,

organization, or other entity," the definition define recipient to include an individual through the inclusion of the following: "Recipient means . . . any person to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee or transferee of a recipient."  45 C.F.R. 84. 3 (f).

36.    Each Defendant whether any public or private agency, institution, organization or other entity as well as any person to which Federal financial assistance is extended directly or indirectly are subject to the applicability and enforcement regulations of the Rehabilitation Act of 1973.

37.    Health care providers are specifically included as a recipient. 45 C.F.R. 84.51-55 (Subpart F – Health, Welfare and Social Services).

38.    It is a violation of the statute and regulations if health care providers "[p]rovide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped individuals."  45 C.F.R. 84.52 (4).

39.    A qualified handicapped person "is a handicapped person who meets the essential eligibility requirements for the receipt of such services.  45 C.F.R. 84.3 (l) (4).

40.    As an example but not exclusively to Defendant or any other recipient of Federal funding Formula grants are provided to the states pursuant to Title 42 of the United States Code which provides in pertinent part:

300. Formula Grants to States

(a)       In General

For the purposes described in subsection (b), the Secretary, acting through the Director of the Center for Mental Health Services, shall make an allotment each fiscal year for each State in an amount determined in accordance with section 300x-7 of this title.  The secretary shall make a grant to the state of the allotment made for the state for the fiscal year if the State submits to the Secretary an application in accordance with section 300x-6 of this title.

41.    The certification by the mental health care institution or doctor for admission to an in-patient mental health facility certifies that the individual meets the essential eligibility requirements for services.  As an individual "treated by a recipient as having such an impairment" Plaintiff is a qualified individual with a disability.

42.    Defendant is principally engaged in the business of serving individuals with mental impairments and, in furtherance of that business, are recipients of Federal financial assistance, and may not discriminate against a person because of that individual's status as a qualified individual regarded as having an impairment.

43.    The actions taken by Defendant through the implementation and administration of the services, programs and activities as to the needs of qualified individuals with disabilities were intentional and were taken beyond the limitations of deliberate indifference to the rights and liberties of Plaintiff.

44.    Defendant through its employees, agents and representatives were fully aware of the law as to false imprisonment and the rights of all citizens and particularly those perceived to be disabled as a result of mental health issues or disease not to be deprived of liberty without due process as reflected in the Alabama statutes cited later in this Complaint and despite this knowledge acted intentionally with discriminatory animus and/or alternatively with deliberate indifference to the rights of Plaintiff to hold him against his will and to administer medications without his consent.

45.    As a direct and proximate result of the actions, intentional and/or in deliberate indifference to the rights and liberties of Plaintiff, Plaintiff has suffered economic and non/economic damages.

**COUNT NO. 2**

46.    All allegations set forth in this Complaint are restated and reiterated herein as if set forth in full.

47.    Americans with Disabilities Act of 1990 and as amended effective January 1, 2009, 42 U.S.C. 12101 et seq. was enacted with the express purpose "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. 12101 (b) (4).

48.    Disability as defined by the Act may be either actual or regarded as having such a disability.  42 U.S.C. 12102.

49.    An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.  42 U.S.C. 12102 (3) (A).

50.    Plaintiff experienced prohibited discrimination against him in violation of the mandates of the statute and regulations protecting and recognizing the individual rights and liberties enjoyed by an individual regarded as having a disability in denial of his rights to liberty and bodily integrity as a result of being held against his will by Defendant from January 15, 2018 until his release on January 18, 2018.

51.    Pursuant to the provisions of the Americans with Disabilities Act as amended the qualified individual with a disability who meets the requirement of "being regarded as having such an impairment" does not have to identify any major life activities or major bodily functions that are substantially limited.  ADA Amendments Act of 2008, Pub. L. No. 110-325 section 2 (a) (1), (4), (B) (1), (3) 42 U.S.C.

12102 under "Historical and Statutory Notes" 29 C.F.R. 1630.1. (c) (4)

(2011).

52.    The duration or expected duration of the impairment is greater

than six months.

53.    The prohibited discrimination occurred because of the

perceived disability of Plaintiff as evidenced by the involuntary

admission of Plaintiff into Defendant's mental health facility;

continued false imprisonment and violation of the Plaintiff's rights

under Alabama state law all in reliance

54.    No qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits

of services, programs, or activities of a public entity, or be subjected

to discrimination by any such entity.  42 U.S.C. 12132.

55.    Title II's definition section states that "public entity" includes

"any State or local government", and any "department, agency, [or]

special purpose district."  Section 12131 (1) (A) (B).  The same section

defines "qualified individual with a disability" as "an individual with a

disability who, with or without reasonable modifications to rules,

policies, or practices, the removal of architectural, communication, or

transportation barriers, or the provision of auxiliary aids and services,

meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Section 12131 (2).

56.    Discrimination may include acts or omissions of Defendant which deny due process, substantive and procedure as well as equal protection guaranteed under the United States Constitution to all persons as a result of disability, actual or regarded as having such a disability.

57.    Remedies for violations of section 12132's discrimination prohibition are those available under section 505 of the Rehabilitation Act of 1973, 29 U.S.C. 794a.  "The remedies, procedures, and rights set forth in section 505 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title."

58.    Section 505 of the Rehabilitation Act incorporates the remedies, rights and procedures set forth in Title VI of the Civil Rights Act of 1964 for violations of section 504 of the Rehabilitation Act.  29 U.S.C. 794(a)(2).

59.    Title VI directs each federal department authorized to extend financial assistance to any department or agency of a State to issue rules and regulations consistent with achievement of the objectives of the statute authorizing financial assistance.  42 U.S.C. 2000d-1. Compliance with such requirements may be effected by the termination or denial of federal funds, or "by any other means authorized by law."  Remedies both at law and in equity are available for violations of the statute.  42 U.S.C. 2000d-7 (a) (2).

60.    "The Attorney General shall promulgate regulations in an accessible format that implement this part."  Section 12134 (a).  The Attorney General's regulations "shall be consistent with this chapter and with the coordination regulations . . . applicable to recipients of Federal financial assistance under [section 504 of the Rehabilitation Act]".  Section 12134 (b).

61.    Section 504 regulations require recipients of federal funds to "administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons."  28 CFR 41.51 (d).

62.    The United States Attorney General issued Title II regulations, see 28 CFR pt. 35 (1998) including one modeled on the section 504 regulation called the "integration regulation":

63.    "A public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."  28 CFR 35.130 (d) (1998).

64.    Unjustified institutionalization of a qualified individual with a disability is discrimination in violation of the Americans with Disabilities Act.  Unjustified institutionalization of a qualified individual with a disability or as in this case the involuntary admission of an individual regarded as having a disability in an inpatient mental health facility violates every principle of decency and integrity possessed by all citizens including but not limited to the right to liberty.  Not only has the Plaintiff been denied his right to liberty but he has also been damaged by the stigmatization of being unable to handle and to manage his own life; diminishment of his self perceived ability to cope with and to handle everyday life activities of individuals, including his family relations, social contacts, work options, economic independence, educational advancement, cultural enrichment and enjoyment of life and liberties recognized and

guaranteed to all persons by the United States Constitution and the laws of the United States.

65.    Plaintiff has experienced both economic and non economic damage as a result of being held against his will by Defendant and is entitled to the recovery of all remedies and recovery available under the applicable statutes including but not limited to the Americans with Disabilities Act.

66.    The actions taken by Defendant through the implementation and administration of the services, programs and activities as to the needs of qualified individuals with disabilities were intentional and were taken beyond the limitations of deliberate indifference to the rights and liberties of Plaintiff.

67.    Defendant, through its employees, agents and representatives were fully aware of the law as to false imprisonment and the rights of all citizens and particularly those perceived to be disabled as a result of mental health issues or disease not to be deprived of liberty without due process as reflected in the Alabama statutes cited later in this Complaint and despite this knowledge acted intentionally with discriminatory animus and/or alternatively with deliberate

indifference to the rights of Plaintiff to hold him against his will and to administer medications without his consent.

**COUNT NO. 3**

68.    All allegations of this Complaint are restated and reiterated herein as if set forth in full.

69.    42 U.S.C. 9501 sets forth the regulations adopted by the Secretary of Health and Human Services relative to the provision of mental health services by the States in order to ensure compliance with the prohibitions against discrimination against qualified individuals with a disability in the mental health system of each State subject to The Rehabilitation Act of 1973 and Americans with Disabilities Act.

70.    Section 9501.  Bill of Rights provides in pertinent part as follows:

    "It is the sense of Congress that each State should review and revise, if necessary, its laws to ensure that mental health patients receive the protection and services they require; and in making such review and revision should take into account the recommendations of the President's Commission on Mental Health and the following:

(1)    A person admitted to a program or facility for the purpose of receiving mental health services should be accorded the following:

    (A)    The right to appropriate treatment and related services in a setting and under conditions that-

        (i)    Are the most supportive of each person's personal liberty; and

        (ii)    Restrict such liberty only to the extent necessary consistent with such person's treatment needs, applicable requirements of law, and applicable judicial orders.

    (D)    The right not to receive a mode or course of treatment, established pursuant to the treatment plan, in the absence of such person's informed, voluntary, written consent to such mode or course of treatment, except treatment-

        (i)    during an emergency situation if such treatment is pursuant to or documented contemporaneously by the written order of a responsible mental health professional; or

(ii)    as permitted under applicable law in the

case of a person committed by a court to a treatment program

or facility.

(K)    The right to be informed promptly at the time of

admission and periodically thereafter, in language and terms

appropriate to such person's condition and ability to

understand, of the rights described in this section.

(N)    The right to exercise the rights described in this

section without reprisal, including reprisal in the form of denial

of any appropriate, available treatment.

(2)    (A)        The rights described in this section should be in

addition to and not in derogation of any other statutory or

constitutional rights.

(D)    Each program or facility should post a notice listing and

describing, in language and terms appropriate to the ability

of the persons to which such notice is addressed to

understand, the rights described in this section of all persons

admitted to such program or facility.

## COUNT NO. 4

71.    All allegations of this Complaint are restated and reiterated

herein as if set forth in full.

72.    Plaintiff possesses a natural right to liberty.  Plaintiff possesses a natural right to freedom of expression and religion.  Plaintiff possesses a natural right to bodily integrity.

73.    Substantive due process is the constitutional doctrine that protects individual's rights from governmental infringement. Substantive due process rights include those enumerated rights in the United States Constitution such as the natural right to liberty and bodily integrity and those unenumerated rights such as to refuse medical treatment protected through both the Fifth Amendment and Ninth Amendment.  The natural rights to liberty, bodily integrity and to refuse medical treatment are fundamental rights.

74.    The Due Process Clause protects liberty beyond physical restraint and provides heightened protection against governmental infringement with fundamental rights and liberty interests.

75.    The liberty interest recognized by the Substantive Due Process Doctrine permits individuals to lead their lives free from unreasonable and arbitrary government infringement.  Substantive Due Process Doctrine requires that the government not deprive a person of life, liberty or property without sufficient justification.

## COUNT NO. 5

76.   Plaintiff has been deprived of his rights and liberties by Defendant as guaranteed under the United States Constitution:

Amendment I

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

## COUNT NO. 6

77.   Plaintiff has been deprived of his rights and liberties by Defendant as guaranteed under the United States Constitution:

Amendment V

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual services in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to

be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**COUNT NO. 7**

78.   Plaintiff has been deprived of his rights and liberties by Defendant as guaranteed under the United States Constitution:

Amendment VIII

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

**COUNT NO. 8**

79.   Plaintiff has been deprived of his rights and liberties by Defendant as guaranteed under the United States Constitution:

Amendment IX

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

**COUNT NO. 9**

80.   Plaintiff has been deprived of his rights and liberties by Defendant as guaranteed under the United States Constitution:

Amendment XIV

Section 1.

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside.  No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

Section 5.

The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

81.    The Due Process Clause of the Fifth Amendment requires that the United States government practice equal protection.  The Equal Protection Clause of the Fourteenth Amendment requires that the states practice equal protection.

82.    Plaintiff was deprived of his constitutional rights and liberties by Defendant as a result of his being regarded as an individual with a disability and subjected to discrimination and deprivation of rights

afforded to all citizens who are not regarded as individuals with a disability.

83.    The First Amendment Right to expression and to religion were deprived when Defendant cited expressions of free speech and religion as a justification or lawful cause for false imprisonment.

84.    Plaintiff was deprived of his right to liberty intentionally, willfully and arbitrarily by Defendant due to the interpretation by the employees, agents and representatives of Defendant of the expression of free speech and religion as "hyperreligiosity".  Defendant interpreted the expression of free speech and religion as evidence of "psychosis".  On these constitutionally protected expressions Defendant literally imprisoned Plaintiff.  Plaintiff in no way admits to the accuracy or correctness of the reporting of any statements made by him or as reflected in the medical record written and maintained solely by Defendant.

85.    Plaintiff committed no crime, has not been charged with violation of any law, state or federal, by any duly commissioned law enforcement official.

86.    Plaintiff has not been made respondent in any proceeding under state or federal law for a declaration of incompetence.

Specifically, no proceeding has been instituted before a probate judge for involuntary confinement or administration of drugs as outlined by applicable Alabama law.

87.     Plaintiff was held against his will and thereby imprisoned by Defendant, administered drugs without his consent and coerced into signing a voluntary admission form in order to be released.  Plaintiff has been denied the equal protection of the law due to his status as an individual regarded as having a disability and has been denied his natural rights as a citizen which are guaranteed and protected by the United States Constitution if he had been accused of any crime.

88.     Individuals accused of any crime are entitled to the protections and guarantees against deprivation of constitutional rights however the same protections and guarantees against deprivation of constitutional rights are not extended or afforded individuals such as Plaintiff who are individuals regarded as having a disability.  Plaintiff has been denied equal protection of the laws by the actions of Defendant.

89.     Plaintiff was deprived of his First Amendment rights to freedom of speech and religion through his false imprisonment for those

expressions even assuming that such reports of such expressions found in the medical record are accurate.

90.    Plaintiff was deprived of his Fifth Amendment rights to equal protection of the law through his false imprisonment and denial of his liberty without due process afforded to any other citizen and specifically any other citizen accused of a crime.  The Fifth Amendment is equally effective to civil as well as criminal proceedings.

91.    Under the Fifth Amendment a criminal accused must be advised of his rights commonly referred to as Miranda warnings however no such rights exists for individuals regarded as having a disability who are subject to involuntary admission, false imprisonment without due process by an entity such as Defendant. None of the rights guaranteed to Plaintiff under the Fifth Amendment were observed nor was due process for deprivation of his liberty and constitutional rights.

92.    Plaintiff was deprived of his Fifth Amendment right to liberty when he was held against his will, falsely imprisoned, by Defendant without any due process whatsoever.

93.    Plaintiff was deprived of his Eighth Amendment right to be free

from cruel or unusual punishment when he was held down by three

or more employees of Defendant and injected with drugs.  The

involuntary administration of drugs to individuals accused or

convicted of a crime is prohibited without due process and the right

to be heard.  The same rights against the involuntary administration

of drugs apply to Plaintiff who has not been accused of any crime nor

has been convicted of any crime let alone a civil proceeding.

94.    Plaintiff was deprived of his Ninth Amendment right to

substantive due process for protection of his non enumerated right

against the involuntary administration of drugs or medical treatment.

95.    Plaintiff has been deprived of further constitutional rights and

protections, the above recitation being only a non-exclusive list of

examples.

96.    All of Plaintiff's constitutional rights and liberties are effective

against the State of Alabama and Defendant through the Fourteenth

Amendment.

97.    All deprivations of constitutional rights and liberties are in

addition to those rights and liberties protected through federal

statutes enacted in furtherance of the authority granted Congress in Section 5 of the Fourteenth Amendment.

## VIOLATIONS OF STATE LAW

98.  Plaintiff incorporates all prior and subsequent paragraphs as if fully restated and reasserted herein.

99.  This Court has supplemental jurisdiction to resolve all claims that arise over such claims that are so related to those claims arising under it's original jurisdiction that those claims are part of the same case or controversy.  28 U.S.C. 1367.

100.  Violations of the Constitution of the State of Alabama and statutes of the State of Alabama arising out of the events, acts and omissions out of which the Federal claims are based are all part of the same case or controversy giving rise to the Federal claims presented in this Complaint.

101.  Jurisdiction is proper in this case pursuant to 28 U.S.C. 1331 as a federal question which provides as follows:

102.  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

103.  The case before this court is not based upon diversity of citizenship or class action.

**COUNT NO. 10**

104.   Violations of the Mental Health Consumers' Rights Act, Title 22-Health, Mental Health and Environmental Control.  Title 2-Mental Health. Chapter 56-Mental Health Consumers' Rights Act. Section 22-56-4-Rights.

105.   Section 22-56-4 guarantees certain rights to all mental health consumers in the State of Alabama including the following pertinent rights:

   (a)   Consumers of mental health services have the same general rights as other citizens of Alabama.  These rights include but are not limited to the following:

      (1)   The right to exercise rights as a citizen of the United States and the State of Alabama.

      (2)   The right to be served through general services available to all citizens.

            . . .

      (4)   The right to be presumed competent until a court of competent jurisdiction, abiding by statutory and constitutional provisions, determines otherwise.

            . . .

(8)  The right to make contracts.

. . .

(13)  The right to exercise rights without reprisal.

(b)     In addition, the rights of consumers of mental health services within inpatient, residential or outpatient settings include, but are not limited to, the following:

(1)     The right to access individualized mental health services.

(2)     The right to participate in the treatment planning process, with material involved in this process presented in language appropriate to the consumer's ability to understand.

(3)     The right to be accorded human respect and dignity on an individual basis in a consistently humane fashion.

(4)     The right to be fully informed, on an individual basis, when needed, concerning services provided, with information presented in a setting and in language appropriate to the consumer's condition and ability to understand.

(5)    The right to a statement of any applicable charges for mental health services, itemized when possible, and the right to be informed of any limitations placed on the duration of services.

. . .

(9)    The right to be free from any physical, verbal, sexual, or psychological abuse, exploitation, coercion, reprisal, intimidation, or neglect.

. . .

(11)   The right to be informed specifically of the procedures for initiating a complaint or grievance procedure and the applicable appeals process, including the means of requesting a hearing or review of the complaint.

(12)   The right to be informed of the means for accessing advocates, ombudsmen, or rights protection services within the program and, as applicable, the State of Alabama mental health system, the Alabama Department of Human Resources, the federal advocacy system, and

other advocacy services. Access must be allowed without reprisal.

(13)   The right to have access to courts and attorneys.

(14)   The right to enforce rights in a court of competent jurisdiction or appropriate administrative proceeding.

(15)   The right to use services in a safe and humane environment.

(16)   The right to be free from seclusion, physical restraints, drugs, or other interventions administered for purposes of punishment, discipline or staff convenience. Restraint, seclusion, or other intrusive treatments may be administered only in situations defined by established standards of medical care taking into consideration the health status of the individual and by applicable governing standards.

(17)   The right to refuse mental health services without reprisal except when refusals are not permitted under applicable law.

. . .

(22)  The rights to conditions of mental health services
which are supportive of each consumer's personal liberty
and restrict liberty only to the extent necessary, consistent
with each consumer's treatment needs, applicable
requirements of law, and applicable judicial orders.  The
right applies to general rights within a clinical setting as
well as to specific rights enumerated in subsection (b).

106.   On or about January 15, 2018, Plaintiff went to Huntsville
Hospital voluntarily to seek mental health assistance.

107.   Plaintiff was interviewed by an individual on behalf of
Defendant on or about January 15, 2018.  The interview upon which
the involuntary admission was not recorded.  Plaintiff did not provide
any written statement concerning any medical necessity for the
involuntary admission.

108.   The only documentation in the possession of Plaintiff and
therefore he relies upon this documentation is a "Psych Screener
Disposition/ Bed Request" dated January 15, 2018 and bearing a time
of 1:17 p.m. on page 1 and 12:40 p.m. for the signature of Dr. Werd
and 12:41 for the signature of the Psychiatric Screener and identifying
a Psychiatrist, Dr. Agha, E.D. Physician Dr. Werd, Diagnosis of

Psychosis and Involuntary Admission to the Behavioral Health Unit of Defendant.  This document bears the written but illegible name of someone identified as "screener" followed by what appears to be the initials "MA ALC".  In addition to the document identified as a "Psych Screener Disposition/ Bed Request" Plaintiff's medical record also included a document entitled "Psychosocial History" dated January 15, 2018 and bearing a time of 11:45 a.m.

109.   The documentation in the possession of Plaintiff and received as a portion of his medical record from Defendant does not reflect or indicate an evaluation or interview by anyone other than the Psychiatric Screener.  Specifically there is no apparent interview or evaluation by a medical doctor prior to Plaintiff being held against his will on January 15, 2018.  Plaintiff did not voluntarily admit himself.

110.   Plaintiff has no history of past psychiatric treatment as reflected in the entries under paragraph 4 of the "Psych Screener Disposition/ Bed Request".  Plaintiff has no history of suicidal or homicidal ideation and none was noted in paragraph 13 of the "Psych Screener Disposition/Bed Request".

111.   The diagnosis for which Plaintiff was involuntarily admitted was "Psychosis" based solely and exclusively upon the unrecorded

interview with the individual identified as a "Psychiatric Screener".

Paragraph 14 of the "Psych Screener Disposition/Bed Request" Psych

Screener Impression: "Pt is having psychotic features and this is new

onset.  Pt is hyper religious and not on any medication.  My

recommendation is admission.  Final Disposition and outcome

deferred to MD."

112.   No evidence of the qualification of the individual identified as

"Pscyh Screener" to make a diagnosis of "psychosis" is contained in

the medical record.

113.   There is no evidence in the medical record supporting or

substantiating the diagnosis of "psychosis".

114.   There is no evidence in the medical record supporting or

substantiating any consideration of voluntary admission or out

patient services.

115.   Plaintiff was held against his will without judicial determination

of his competency or of the need for involuntary admission.

116.   The nurse's notes of Defendant reflect that Plaintiff was held

against his will prior to the completion of the document entitled

"Psych Screener Disposition/Bed Request". Specifically, the nurse's

note in Plaintiff's medical record indicate the admission date of January 15, 2018 however indicate the creation of those nurse's notes at 8:39 a.m. and completion at 9:59 a.m.  Under the entry for PREHOSPITAL CARE the following entries appear: "psych screener has not seen patient.  Security was notified for patient search.  (-) Patient in custody of type in, received to bed with handcuffs.  Security notified by ED Staff to bring forensic packet to bedside. Forensics notification placed on bedrail."  Of particular importance is the notation that (1) no psych prescreen had been conducted when Plaintiff was held against his will but also there had been no medical evaluation.

117.   The nurse's notes of Defendant reflect that on January 15, 2018 at 2.54 p.m. Plaintiff was forcibly and involuntarily administered medication by injection.  Plaintiff was forcibly held down by "3 techs and security officer to deliver medications."  At this time Plaintiff was demanding to be released from confinement.

118.   The nurse's notes contain a Physician Note:  I have personally interviewed and examined the patient and have reviewed the above documentation by the Lowry, Morgan P.A.  Pt with recent onset hyper religiosity, decreased sleep, aggression toward wife at home c/w

manic disorder with psychotic features.  Admit for further

management." Dated January 15, 2018 time 2:36 p.m.

119.   Plaintiff was ultimately released from Defendant hospital on

January 18, 2018 at 8:24 a.m. but only after having been coerced and

threatened with further confinement and involuntary administration

of drugs if he did not sign the voluntary admission document.

120.   At no time did Plaintiff consent to or agree to take the

medication demanded by Defendant.  At no time was Plaintiff advised

as to the medication, type, strength or side effects nor was he allowed

to refuse administration of those medication.

121.   On his involuntary admission Plaintiff was given an ultimatum

to either take the medication by mouth or involuntary injection.

Plaintiff was presented with this ultimatum while being held in a

hospital room dressed only in a hospital gown and surrounded by

hospital personnel.  None of the required disclosures as to the

medication, dosage, possible side effects or other facts were made.

Plaintiff took at least one of the medications demanded.  Plaintiff

experienced a reaction to the medication and was subsequently held

down and injected.

122.   On January 16, 2018 Plaintiff was again not advised as to any of the medications being administered to him and was again told that he did not have a choice as to whether or not to take the medication because he was involuntarily admitted and that there were doctor's orders for the administration of the medications.

123.   On January 17, 2018 Plaintiff was again administered medications.  On this occasion Plaintiff restated and reiterated his lack of knowledge of the medications being administered and was given a printed sheet of information of Geodon and Trileptal.

124.   At no time was the proposed plan of treatment including involuntary admission or involuntary administration of medications or physical restraint by four individuals employed by Defendant discussed with Plaintiff.

125.   At no time was Plaintiff advised of his rights as a mental health patient pursuant to 42 U.S.C. 9501 (1).

126.   Plaintiff was presented with a form stating that he was a voluntary admission on January 17, 2018.  Plaintiff signed the voluntary admission form presented under duress.  It was made clear that if he wished to be released he would have to cooperate with the

demanded voluntary admission and medications.  Plaintiff did not meet Doctor Vasavada until January 17, 2018 when he was presented with a voluntary admission form as a condition of release.  Doctor Vasavada stated that it would "be in my best interest" to sign the voluntary admission form presented.

127.   On January 18, 2018 Plaintiff was released.  At the time of his release Doctor Vasavada stated "your insurance will only pay for so long."

**COUNT NO. 11**

128.   The procedure for placing restrictions upon the liberty of a person sought to be committed pending hearing and ordering of examinations of persons sought to be committed; supervision of temporary treatment is set forth in Alabama Code Section 22-52-7.

129.   As stated in the first line of the first paragraph of the code section setting forth the procedure which must be followed in order to hold a person against his will such as was done to Plaintiff herein the filing of a petition seeking to have limitations placed upon the liberty of a person such as Plaintiff  shall be filed before the Probate Court of the person's residence and the decision to impose any limitation on

the liberty of a person such as Plaintiff is limited solely to the
authority of the Probate Court.  For the purposes of clarity the text of
Section 22-52-7 is reproduced with emphasis:

>    (a)     When *a petition has been filed* seeking to have limitations
>    placed upon the liberty of a respondent *pending the
>    outcome of a final hearing on the merits,* the probate
>    judge shall order the sheriff of the county in which the
>    respondent is located to serve a copy of the petition upon
>    the respondent and to bring the respondent before the
>    probate judge instanter.  When any respondent against
>    whom a petition has been filed seeking to have limitations
>    placed upon the respondent's liberty pending the outcome
>    of a full and final hearing on the merits is initially brought
>    before the probate judge, *the probate judge shall
>    determine from an interview with the respondent and
>    other available persons what limitations, if any, shall be
>    imposed upon the respondent's liberty and what
>    temporary treatment, if any, shall be imposed upon the
>    respondent pending further hearings.  If limitations on
>    the respondent's liberty are ordered, the probate judge*

*may order the respondent detained under the provisions of this section at a designated mental health facility or a hospital.*

(b)   *No limitations shall be placed upon the respondent's liberty nor treatment imposed upon the respondent unless such limitations are necessary to prevent the respondent from doing substantial and immediate harm to himself or to others* or to prevent the respondent from leaving the jurisdiction of the court.  No respondent shall be placed in a jail or other facility for persons accused of or convicted of committing crimes.

(c)   *The probate judge shall order the respondent to appear at the times and places set for hearing and may order the respondent to appear at designated times and places to be examined by licensed medical doctors or qualified mental health professionals.  If the respondent fails to appear as ordered by the probate judge, the probate judge may order the sheriff of the county in which the respondent is located to take the respondent into custody and compel the respondent's attendance as ordered by*

*the probate judge.*  If temporary treatment or admittance to a hospital is ordered for the respondent, such treatment shall be supervised by a licensed medical doctor or qualified mental health professional who has willingly consented to treat the respondent, and admission to a hospital shall be ordered by a licensed medical doctor who has willingly consent to admit and treatment the respondent.

130.   None of the individuals identified in the medical record whether the "Psych screener" or any of the doctors purported to have interviewed, examined and then not only taken Plaintiff into their mental health facility and administered medications without consent of Plaintiff are authorized to do so as probate judges.

131.   All the individuals identified in the medical record would potentially be witnesses at a hearing held before the probate judge to give testimony as what limitations, if any, and what medications, if any, should be placed upon the liberty of Plaintiff.  None of the individuals identified in the medical record are the judge and jury as to what limitations on the liberty of Plaintiff or what medications he should be administered against his will.

**COUNT NO. 12**

132.   False Imprisonment is a tort defined by Alabama state law pursuant to Alabama Code Section 6-5-170 as follows:

False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty.

133.   Plaintiff was held against his will in a mental health facility and deprived of his liberty unlawfully by Defendant from January 15, 2018 until his release on January 18, 2018.

134.   At the time of his initial appearance at Defendant's mental health facility the initial questioning by the individual identified only as "Psych Screener" was as to his insurance coverage.

135.   Plaintiff was insured by Blue Cross Blue Shield.

136.   After having held Plaintiff for three days against his will unlawfully for the stated reason of mental illness and having charged his insurance company for his unlawful detention he was released.

137.   As a result of the unlawful detention with the purpose of collecting payment from his insurance company Plaintiff has suffered economic and non economic damage.

## PREVAILING PARTY

138.   Plaintiff is entitled to be designated as the prevailing party in this action and to be awarded reasonable attorney's fees, including litigation expenses, and costs.

## JURY TRIAL

139.   Plaintiff requests trial by jury.

## RECOVERY, REMEDIES AND DAMAGES

140.   Plaintiff incorporates all prior and subsequent paragraphs as if fully restated and re alleged herein.

141.   As a direct proximate cause and/or as a producing cause of the acts and/or omissions of Defendant described in this Complaint Plaintiff has suffered injuries and damages for which Plaintiff seeks recovery.

142.   Plaintiff seeks full and fair compensation for actual damages suffered.

143.   Additionally and/or alternatively Plaintiff seeks full and fair compensation in an amount to be determined by the jury upon trial of this case for:

past, present and future physical pain and suffering;

past, present and future mental anguish, anxiety, embarrassment and other items of damage resulting from the violations committed by Defendant;

past, present and future emotional and psychological impairment or damage;

past, present and future medical and health care expenses including but not limited to mental health care expenses;

and/or

any other actual or compensatory damages allowed by law;

Attorney fees together with litigation costs;

All costs of court and prejudgment and post judgment interest at the maximum rate allowed by law;

And any and all further relief available by law or equity.

## PRAYER

WHEREFORE, Plaintiff prays that this Complaint be filed; that Defendant by duly cited to appear and answer same; that after all due proceedings are had that there by judgment in favor of Plaintiff and against Defendant for an award of damages determined

by the jury in this case to be fair and reasonable together with attorney fees together with litigation costs; all costs of court and prejudgment and post judgment interest at the maximum rate allowed by law and any further relief available by law and equity.

Respectfully submitted

/s/ Albert W. Block, Jr.
La. Bar no. 03148
402A W. Palm Valley Blvd.
PMB 344
Round Rock, Texas 78664
(318) 366-4368 telephone
(512) 717-7248 facsimile
aw@blockslaw.com
*Attorney for Plaintiff*
*Pro Hac Vice Motion Pending*

/s/ Kenneth D. Haynes
Ala. Bar no. 6190H36K
1600 Woodmere Drive
Birmingham, Alabama 35226
(205) 879-0377 telephone
(205) 879-3572 facsimile
kdhaynes@haynes-haynes.com